is Contreras versus Davis and Mr. McGuire whenever you're ready. Take your time. Good morning, your honors. I did check the clock. May it please the court. My name is Matt McGuire on behalf of the warden. Over a 12-day period in 1996, Jason Michael Contreras robbed three people at gunpoint and shot a fourth person in the back, killing him during an attempted robbery. He voluntarily pled guilty to 11 felonies and after an extensive sentencing hearing where five witnesses testified on his behalf, he was sentenced to 77 years in prison. I want to break those down very quickly for the court. He received 23 years for five firearms charges, two years for statutory burglary, two years for an attempted robbery, five years each for the three robberies, and 35 years for the first-degree murder. So with that quick background, there are just two questions for the court to resolve this morning. The first is whether the U.S. Supreme Court's decision in Miller versus Alabama serves to validate Contreras' guilty plea and entitle him to a new trial. We submit that the answer to that question is no under the U.S. Supreme Court's decision in Brady versus the United States and this Court's decision in Dingell versus Stevenson. And then the second question for the court to consider is whether Miller instead entitles Mr. Contreras to a new sentencing hearing, which is what the district court held in this case. We would submit that the answer to that question is also no and that the district court should be reversed because there are essentially five things this court would have to find in order to affirm the court's analysis. The first is that Mr. Contreras actually raised a Miller sentencing claim when his counsel filed habeas petition really only stated one claim related to the voluntariness of his guilty plea. The second is that Miller applies to a discretionary sentence and not just mandatory sentencing schemes. The third is that Miller applies to term of year sentences, not just life sentences, and that you also aggregate term of year sentences together to get to that issue. The fourth that the individualized sentencing hearing Mr. Contreras actually had in this case was defective under Miller and Montgomery. And the fifth is that parole eligibility or eligibility for release based on ordinary parole considerations at age 60 is insufficient to cure any violation of Miller. So with that set up, what I would posit to the court is that the simplest way to resolve this case is to look at first the guilty plea issue, particularly with Dingell v. Stevenson, which involved Roper v. Simmons, where a defendant from South Carolina said that he was threatened with the death penalty that was struck down by Roper as applied to juveniles and that he said his plea was unconstitutionally coerced because he was threatened with that sentence. And this court looked at Brady v. United States and said that's just not possible. Well, we don't apply new rules in that fashion to strike down guilty pleas. And so as we said in our reply brief, I think the court can pretty much look at Dingell and sort of insert Miller for Roper and arrive at the same place in this case. One thing that Mr. Contreras does in his brief is he talks a lot about the facts and says that you have to look beyond the law. His claim doesn't just rest on Miller. It also rests on the facts as they relate to him. But he had the opportunity to present true facts about his youth and immaturity and whether or not that actually made his plea involuntary factually long ago. And in his time for filing that type of habeas petition has since passed. And in fact, he actually filed one back in 1999 that raised a number of those types of arguments. So really, the only way he can be entitled to have his guilty plea invalidated is simply if Miller stands for that proposition. Do you think that the claims about the facts, if we were to get to those facts, that that's outside of his Miller claim? You understand, like his mental condition and all that, on the voluntary side, he made a Miller claim, correct? That's right. Do you think that his claims about, I also have other conditions outside of the Miller claim about unconstitutionality of a sentence, that he tries to, it seems to me, he tries to add on my own personal circumstances. Do you think that's even in this case? No, Your Honor, I don't. And he couldn't bring it timely. Anyway, the only way he has a timely habeas petition here is under 2244 in the rule that gives you one year from a new rule of constitutional law that applies retroactively on collateral review. So the only claim he can be timely before this court on is just under Miller, whether Miller entitles him to release. Well, your argument is that Miller's only relevant to his voluntariness argument insofar as he felt coerced because Miller was in an unconstitutional sentence, and Brady takes care of that issue. That's right. And beyond that issue, then it's just a straight-on voluntariness examination, which is 20 years old and is no longer available. That's right, Judge Niemeyer. That is exactly how we see this case, and so on. That's on the voluntariness issue, yeah. Right. And so then if we move to the Miller question in the case, which is the one we are the appellant in, it's sort of our first threshold argument was he didn't raise a true Miller sentencing claim other than a stray sentence at the end of his prayer for relief. He raised one specifically stated, set off in his habeas petition claim, which was that my guilty plea was coerced and therefore was involuntary. So we don't think he actually raised the Miller claim at all, and that the district court sort of went beyond the petition in order to grant relief in this case, because it seems to me that the district court judge realized he couldn't really overturn the guilty plea. So we would submit that he didn't raise this Miller claim, but if he did, I think there were really two easy-ish paths for the court to get out. The narrowest ground, I think, would be to say that eligibility for release at age 60, which Mr. Contreras is eligible for because he's a first-degree murderer, that that cures any violation of Miller that may or may not have occurred. Because he's eligible for release, he's not serving a life without parole sentence, much less a mandatory one, and therefore he's not entitled to relief. I think another way the court could go is to say that Miller on its own terms, the holding of Miller is we do not allow mandatory life without parole for juvenile homicide offenders. As I think I put it in the brief, it's the legislature can't make that judgment that every juvenile can never be released from prison, that you have to have the opportunity to come to court and explain why your youth and transient immaturity and other characteristics mean that you should be given a chance to obtain release. So the court could look at that and say, this sentence here is absolutely discretionary. It's discretionary under Virginia law. For first-degree murder, he could have gotten anywhere from 20 years. Don't you think Montgomery might have expanded Miller a little bit without sort of minimizing the mandatory aspect and focusing more on the life sentence for juveniles? That's a dicier row to hoe, isn't it? So, Judge Meemeyer, I have two responses to that. The first is that Montgomery was taken up on a very narrow question, which was does Miller apply retroactively on collateral review? So if the court thinks or we think that Montgomery did expand Miller, in every direct review case going forward, everybody sort of has to pull in a Teague case to try to understand what the new rule of constitutional law is. And so that leads to my second point, which is if Montgomery did expand Miller, then that's a claim under Montgomery. Montgomery itself must be a new rule of constitutional law that provides defendants extra rights beyond Miller. But this case is here on Miller, and whatever Mr. Contreras's rights are have to be set forth by the Supreme Court in the Miller opinion. And the Miller opinion is sort of striking for how clear it is about what its holding is. It says we forbid mandatory life without parole, and the reason why we do that is because by making it mandatory, you take away the opportunity for any juvenile to explain why I don't deserve the sentence. And Justice Kagan gets there principally by looking at both Graham and Roper and why juveniles are different. But she also marries it to the idea of the death penalty, that life without parole in some sense is a death sentence, and that we require sort of individualized considerations or the opportunity for them in those cases. So we're going to apply the logic here that you can't tell a juvenile you will never get out of prison if you didn't give them a chance to come forward and explain why that shouldn't be the result. Is your argument on if we get to discuss effective life sentence, is it because of Virginia courts? Have said that although it looks like it's mandatory, it really isn't mandatory? Or is it the geriatric release under any circumstances that makes it not mandatory? Makes it not a life sentence? Mandatory life sentence? Judge Ed, it's sort of both. So for first degree murderers in particular, they're eligible for geriatric release. In the Jones decision from the Virginia Supreme Court, that involved a class 1 felony, a capital murder offense. Those offenders are not eligible for release at age 60. And so in Jones, what the Virginia Supreme Court said is, look, it has always been the law in Virginia. As a matter of Virginia law, these judges have always had the authority to suspend the life sentence at whole or in part. And a court actually took this up a little bit before Miller was decided. Pinckney v. Clark was a case this court decided not too long ago. And in that case, the trial court judge way back in Virginia allowed the defendant, Pree Miller, to put on a significant amount of mitigation evidence. And so it's not true as there's been some allegations in other cases where Virginia doesn't, is never allowed, or nobody's ever had a suspended sentence in Virginia. It's provided for by law, and at least one court has done it. We would say that Jones is binding on this court as a matter of Virginia sentencing law. And so- Why don't you have LeBlanc that just categorically, Supreme Court, just reverse that in your favor. LeBlanc's basically saying that geriatric release, we should honor Angel, which says the geriatric release is not a mandatory sentence, life sentence, without parole. That's right, Judge Niemeyer. That's why I said, I think there's two paths the court can take that seem to be the easiest to me. Yeah, that, isn't that, I was going to say, isn't that- That is the narrowest, we said this in our reply, that is the narrowest grounds on which to resolve this case, is to just say he's eligible for release at age 60, that qualifies as a meaningful opportunity under Graham, so it has to qualify as a meaningful opportunity under Miller. I would just- I really understand that, listen, and you understand my question. I was trying to get your take on what the Virginia law on mandatory life is. I understand what the court said, which is, it looks like it's mandatory, but it never, it isn't, and it never has been. But that was clarified after this case, correct? Jones came out after this case, there's a number of them that are all sort of moving in different directions. I know this, but the point is, it looks like there's at least, it looks like the claim here is, I was afraid of the mandatory life, so that's why I took the plea I did, on the volunteer side, and then as to that, there's a claim that, well, it really is mandatory, but that is just kind of a little bit of an arcane question, what do you do in that decision as to what that language looks like, but doesn't really mean, comes out after the fact. Judge, so going back to the kind of first question of whether or not he was actually threatened with a mandatory life without parole sentence, I should clarify, our position would be, no, he wasn't, because Jones makes clear that there is no mandatory life without parole in Virginia. And they made it clear when? Pardon? It made it clear when? That's right, Judge Shedd. Even if you took it at face value that that is, that was true, thought that was true, we would still win under Dingell versus Stevenson. So kind of for those reasons, I think on the guilty plea side, either because he wasn't actually threatened with a mandatory sentence, or because Dingell controls if he was, and on the Miller sentencing side, eligibility for geriatric release at age 60 shows that he's not serving life without parole. Unless the court has further questions at this time, I'll reserve the remainder for rebuttal. All right, thank you. Mr. Somerville. May it please the court, I am George Somerville, counsel for the petitioner, respondent, cross appellate, appellee, Jason Contreras. Jonathan Sheldon is with me at the table. I do believe that the court should reverse on the voluntariness issue, and I believe that Jason's personal characteristics that you referred to, Judge Shedd, are relevant as highlighted by the line of cases that started with Roper and continued through Graham, Miller, and Montgomery. I also would like to point out this is not a Brady case. Well, this is not Brady. This case should be guided by the analysis in Brady, in which the court said that the circumstances, Brady was a mature, competent adult in full control of his mental faculties advised by competent counsel. Those were his circumstances. Jason was a bewildered, immature, 16-year-old boy, unable to understand even what was happening, much less to assist his attorneys with his defense. Those were Jason's circumstances. Now, on the sentencing issue, at minimum, this court should affirm the judgment. Jason was given an aggregate, it's not clear from the record whether it's 75 or 77 years sentence, but in either event, for a 16-year-old boy, that is a de facto life sentence. The guiding principle I asked the court to apply in this case is stated in Montgomery. A court has no authority to leave in place a conviction or sentence that violates a substantive rule. Montgomery makes clear that the holding of Miller is a substantive rule, and the holding of Miller is that a matter of constitutional law, a sentencing court may not treat a teenage boy as a miniature adult. Miller and Montgomery do allow life sentences for juvenile homicide offenders, but only if the sentencing court takes into account the distinctive characteristics of youth and concludes that the defendant exhibits irreparable corruption or irretrievable depravity. The sentencing judge in this case did exactly what Miller and Montgomery forbid. It's understandable, I'm not criticizing the judge, he was acting before those cases were decided, but it's beyond dispute under Montgomery that the new rule announced in Miller applies retroactively to cases in collateral review. The judge at the sentencing hearing said, when you put in a gun in your hand, you go out here and use that deadly weapon to intimidate, rob, murder, you're grown. You are fully grown. That's page 468 in the appendix. Starting at the bottom of the same page, he said, this behavior, this evidence is not about a child. And he repeated it. This evidence is not about a child. Let me ask you this. Let's say he did not take those factors into consideration. Isn't it true, though, that he gave him a sentence, if you assume 77 years is a life, which is another argument that could be made one way or the other, but let's assume it's a life sentence. But it's not a life sentence without parole, as precluded by Miller. They have the geriatric release at age 60, and while the briefs relied on our decision in LeBlanc to say that that really wasn't effective, it looks like that, we were overruled in that by the Supreme Court, and Angel, which is the case in Virginia, says that that does apply parole standards at age 60. At that point, aren't we out from under the rule in Miller? Angel was actually decided before LeBlanc. It was discussed in the two opinions. Yes, but it was the standard. It was the decision that assessed, under Graham, assessed geriatric release, and we said that effectively, because it's not seldom granted, we use some statistics and so forth, we said, no, there is no analogous release, and the Supreme Court reversed us on that. The Supreme Court reversed applying AEDPA deference under section 2254, and importantly, the court did not defer to the Supreme Court's decision, and Angel, as counsel for the warden said, it deferred as required by the statute to the circuit court decision, the last decision of a state court in LeBlanc's case. Statutory deference under the AEDPA is not to a state court precedent, which Angel may be. The standard of review actually is stated correctly in both of the principal briefs. It is de novo. Did the court commit error? Neither more nor less, and I submit that the court should follow the reasoning of LeBlanc for the reasons stated in that case. Geriatric release in Virginia is standardless. It can be denied arbitrarily or for no reason at all at the first step of the process, which the court in Angel did not even discuss, skipped right over. At the second step, if we get past the first step, I would agree with Angel. That was correctly decided, but it overlooked the fact that at the first step, the parole authority has, in the words of LeBlanc, unconstrained discretion. Fewer than 5% of all geriatric release petitions are granted in Virginia. More than 95% are denied on the ground of, and I quote, irretrievably depraved. If you were sure that he was going to get geriatric reprieve or whatever they call it at age 60, then you don't think that's an effective life sentence. You don't think his serving to age 60, then he has no claim under Miller. Is that correct? If he were, had a fair anticipation of release at age 60, then that would, I would agree, would not be a defacto life sentence. How far does he have to get beyond 60 for it to be, for it to be an effective life sentence? Just asking. I don't, what's a life expenditure? The biblical three score and ten? No, no, it's about 70, 75, 78. Yeah. So if a sentence was going to take him, if he had a sentence, anything short of 70 years, that's fine under your argument? It probably would be. Jason Contreras is facing a sentence. No, no, I'm just asking so I understand what your claim of effective life sentence is. I think a defacto life sentence is a fact question for each case. I don't think it's something you can lay down a rule of law on. I'm asking you though. Asking me? I would think 85. You know, a lot of us live to be 85 these days. I hope I do. I hope you do too, WBP. Well, Jason is looking. Has any court equated a sentence, a term sentence, to be equivalent to a life sentence for these purposes? A number of courts have done so. This court has not reached that question. The Seventh Circuit in McKinley, the Ninth Circuit in the Bitter case. And what did they conclude? Did they have a number they concluded or what did they? They addressed the facts of those cases. In one case it was 254 years, another it was two times 50 consecutive. Those are pretty clearly beyond any expectation. I mean, the only reason I ask, and I'm not sure it's an appropriate thing to get into, but he can earn 15% reduction of 77 years with good behavior, right? My understanding of Virginia parole law, Judge Niemeyer, is that good behavior credit is out. The only prospect. Oh, he doesn't get any good time credit in this? I may be subject to correction on that, but that's my understanding. I think that's correct. I mean, I think for offenses committed on or after January 1st, 1995, parole is not available. I'm not talking about parole, I'm talking about good time. Good time, okay. Sorry. Good time credits. Yeah, good time. Let me, if I may, get back to the geriatric release proposition. The reason that the parole board denies more than 95% of the geriatric release petitions is irretrievably depraved character. Could I ask, though, I didn't hear, perhaps because I was looking in my notes, what was your answer to Judge Niemeyer's question about good time credit? You don't believe that's available either? I do not believe that it is, Judge Duncan, but I may be subject to correction on that. It's not really my forte, frankly. When the rationale of irretrievably depraved character is applied to prisoners who were juveniles at the time of their conviction, that is squarely contrary to the reasons underlying the series of cases that started with Roper, Guster, Graham, Miller, and Montgomery. The facts here are incredibly sad. In terms of the circumstances that Mr. Contreras endured and the circumstances that led to his being in the position that he was. As you know, the difficulty that we have is the scope of our review under AEDPA. So can you give me the cleanest line to the result that you want that does not have unfortunate collateral damage? You see what I'm asking? What in your view would be the simplest, most straightforward way to agree with it, for us to agree with the district court if we were to do so? First of all, the AEDPA does not apply in this case. There is no state court adjudication on the question presented by the petition and there's no relief, there's no avenue in state court. So as the warden argued in the district court, the claim was considered exhaustive but he said it was also procedurally default. So AEDPA is out of the question. The direct line is that this is a de facto life sentence. It was issued not only without consideration of the distinctive characteristics of youth, as the Seventh Circuit pointed out in McKinley, but explicitly disregarding, putting aside, treating this 15-year-old boy at the time of his crime, 16 at the time of his crime, as an adult. That is contrary to the law laid down in Montgomery and Miller. Thank you. And that's my argument, Your Honor. Thank you. Thank you. Mr. McGuire. May it please the Court, just a handful of points on rebuttal. First on the guilty plea side of the case. The way I understand their response brief and the way I sort of understood the argument this morning is that effectively no juvenile can really plead guilty because they all suffer from transient youth and immaturity and their mental capacities aren't equivalent to an adult. The Supreme Court has never held that. Miller didn't touch on that issue really at all. So that seems to me a far cry from this case. With respect to the Miller sentencing issues, I'm just going to kind of try to work through these in order. And I want to start by saying something I think I said at the beginning, but just reiterate. The Commonwealth and the ward certainly understands that Miller is a substantive rule of constitutional law and that it is a big deal. Certainly the juveniles in Alabama, Arkansas, Texas, or Louisiana, anywhere else where the legislature decided that you would spend the rest of your life in prison and no judge had any authority to do anything different for you. This case is simply a far cry from that. We're not talking about a mandatory sentence at all in this case. Miller's first-degree murder carried 20 years to life. He received 35. And on all of the other crimes that the judge sentenced him for, he deviated significantly down from the maximum penalty. He could have gotten life on every robbery charge, and he got five years each. He could have gotten 20 years for statutory burglary, and he got two years. So this case is just nothing like the defendant at issue in Miller or in Montgomery. With respect to ANGEL and geriatric release, although we would say the 2254D deference doesn't apply here because we don't have an underlying state adjudication, ANGEL is still a decision of state law about how Virginia's parole regulations work. And conditional release is a statutory right under Virginia. And so as the Supreme Court said in LeBlanc, and particularly I would commend you to Justice Ginsburg's concurrence, where she made the point that she joined the Court's opinion on the understanding that ANGEL is binding on the Virginia Parole Board that the ordinary considerations for parole apply every step of the geriatric release process. So ANGEL does control as a matter of state law. And so to this Court's original LeBlanc opinion where they said it didn't apply at Step 1, so that was the problem. It does apply at Step 1, and that's one of the bases for the holding from the U.S. is Miller doesn't speak about de facto life. Miller speaks about mandatory life without parole. And so this Court would have to make the extension in order to even reach the issue about whether there is a de facto life sentence here. And I would submit that there is still the buried question about whether we're talking about the 35-year sentence he received for the murder or if we're talking about the 77 years. Well, let's assume he got 77 years as opposed to the 35 just for the murder. Does he, can he earn good time credits? Judge Niemeyer, that was my last point. I will have to submit a letter to the Court on that issue. I don't know the answer to that question. Well, I'm not sure. If it's not too much, why don't you just do that? And then your counterpart, you don't have to respond if he's accurate or you can respond to it with a letter. But my guess is that it's just a black and white question of whether he can earn it. If we were to get to it, then you would, if you had a 15% good time credits, you would be getting down into 60 years, some years. That's right, Judge Niemeyer. 68 or whatever it is. I haven't figured it out. But if he could earn good time credits. That's right. I'll endeavor to get that letter on file as soon as possible. Otherwise, we would ask the Court to reverse the District Court and dismiss the petition. All right. Thank you. You've got it. I won't use all of it. No, it's all right. Take it off. This was stated in the brief that we filed in the District Court, not in the appendix on appeal, but I am advised by Mr. Sheldon that no one in the United States has ever survived more than 68 years in prison. So 77 years is effectively de facto life. That said, Mr. Sheldon also advises that Jason can earn 15% good time credit if he behaves. Okay. Thank you. Is that okay for you? Okay. Thank you. That's helpful. We'll adjourn court for the day and come down and greet counsel. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Paul V. Niemeyer, Dennis W. Shedd, Allyson K. Duncan